IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RILEY T. GUNTER, ) <br> ) <br> Plaintiff. ) <br> ) <br> v. ) <br> ) <br> CITY OF OMAHA, a Political Subdivision ) <br> RAY HUTZELL, and JERRY MAHONEY, ) <br> in their official and individual capacities ) <br> ) <br> Defendants. ) <br> ) | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Comes now Plaintiff Riley T. Gunter ("Plaintiff" or "Mr. Gunter"), by and through his undersigned counsel, hereby files this Complaint against the City of Omaha, RAY HUTZELL, and JERRY MAHONEY, ("Defendant" or "Defendants") and states and alleges as follows:

### I. NATURE OF THE ACTION

This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to seek redress against Defendant, the City of Omaha, Defendant, Jerry Mahoney and Defendant Ray Hutzell for unlawful discrimination based on race, committed against Plaintiff by Defendants, in violation of: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et.seq*. (Title VII), 42 U.S.C Section 1983, 42 U.S.C. Section 1981, 29 U.S.C. Section 2615(a) and (b) and the Nebraska Fair Employment Practices Act Neb. Rev. Stat. Section 48-1101, *est. seq.*, for unlawful employment practices including retaliation against Plaintiff for his complaints, specifically discrimination on the basis of race and Family Medical Leave Act (FMLA) retaliation.

### II. JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. Sections 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under federal law. This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. Sections 1367(a).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under the statutory and common law pursuant to 28 U.S.C. Section 1338 (b), because those claims are joined with substantial and related claims under federal law.

3. Venue is proper in this district pursuant to 28 U.S.C. Sections 1391(b) and (c) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

### III. ADMINISTRATIVE PROCEDURES

4. On October 7, 2019, and November 14, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Nebraska Equal Opportunity Commission ("NEOC"). These charges of discrimination arose out of the same facts alleged herein. On April 27, 2021, Plaintiff received a Notice of Right to Sue from the EEOC and NEOC. This action was timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.[1]

5. Plaintiff has complied with any and all other prerequisites to filing this Action.

### IV. PARTIES

6. Plaintiff, Riley T. Gunter is a resident of Douglas County, State of Nebraska.

---

[1] See exhibit 1.

7. On or around March 18, 2013, the City of Omaha hired Plaintiff as a Stationary Engineer in the Public Works Department.

8. Plaintiff was employed by the City of Omaha as a Stationary Engineer in the Public Works Department from on or around March 18, 2013, to November 15, 2019.

9. At all relevant times, Plaintiff met the definition of an "employee"

10. At all relevant times, Defendant has continuously been a political subdivision doing business in the State of Nebraska and the City of Omaha, Nebraska. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. Section 2000e-(b), (g) and (h).

11. At all relevant times, Defendant has employed at least fifteen (15) employees.

12. At all relevant times Defendant, Ray Hutzel, a white male was Plaintiff's supervisor with the title of City Maintenance Superintendent and an employee, agent or servant of the City of Omaha, Nebraska. He is sued both individually and in his official capacity.

13. At all relevant times Defendant, Jerry Mahoney, a white male was Plaintiff's immediate Foreman and an employee, agent or servant of the City of Omaha, Nebraska. He is sued both individually and in his official capacity.

## V. FACTUAL BACKGROUND

14. Plaintiff, Mr. Riley T. Gunter is an African American male.

15. On or around March 18, 2013, the City of Omaha hired Plaintiff as a Stationary Engineer in the Public Works Department.

16. From 2017 Plaintiff complained of discrimination or harassing treatment inflected towards him in the course of his employment, committed by other white employees to

then Human Resource Director for the City of Omaha, Mr. Tim Young, Plant Manager, Mr. David Sykora and Local 251 Union President Mr. Tony Burkhalter.

17. In 2016 or 2017 Plaintiff applied for the City Maintenance Supervisor Wastewater Treatment Plant position and qualified for an interview.

18. In 2016 or 2017 Plaintiff was not hired for the City Maintenance Supervisor Wastewater Treatment Plant position, however Plaintiff's name was placed on a qualified list, as the only individual qualified for the position, upon information and belief.

19. In 2017 and 2018, Plaintiff complained and reported instances of workplace harassment inflecting up him based on race in the course of employment, inflicted by Public Works Department employee Mr. Don Neitzke, a white male.

20. Plaintiff prompted a formal internal investigation of harassment based on race and color, pursuant to *Executive Order No. S-33-16*.

21. Upon information and belief, on January 25, 2018, an opening for a Maintenance Supervisor-Wastewater Treatment Plant position emerged, however the year experience requirement for the position was changed from (3) three years to six (6) years, which in consequence excluded Plaintiff from the qualified list.

22. On March 8, 2018, Human Resource Director for the City of Omaha, Mr. Tim Young, who was responsible for the conducting the internal investigation of Plaintiff's claim, concluded, in an investigatory report that Plaintiff was "not subjected to incidents of inappropriate conduct of discriminatory or harassing nature because of [Plaintiff's] race or color.

4

23. On October 11, 2018, Plaintiff complained and reported workplace discrimination or harassment inflecting up him based on race in the course of employment, inflicted by his immediate foreman, Mr. Jerry Mahoney, a white male.

24. Plaintiff prompted an internal investigation of discrimination or harassment based on race pursuant to the City of Omaha's Civilian Bargaining Unit Employees and Omaha City Employee's Local 251 Official Grievance Form.

25. The Local 251 declined to proceed to arbitration in connection with Plaintiff's allegations.

26. On November 30, 2018, Plaintiff was injured at work.

27. Plaintiff submitted medical documentation which required reduced exertional and/or non-exertional essential job functions within the scope of Plaintiff's Stationary Engineer position.

28. Defendants honored these restrictions by reducing Plaintiff's essential job functions within the scope of Plaintiff's Stationary Engineer position—which entailed a reduction of required climbing, reaching, balancing, bending, stooping, squatting, kneeling, crouching, crawling, standing, walking, lifting, and carrying under the essential functions described in the job specification of in the Public Works Department.

29. In 2018, Plaintiff completed his open enrollment for the City of Omaha for the option of $20,000 Voluntary Spousal Life Insurance for his wife.

30. In December 2018, January 2019, and February 2019 Plaintiff received confirmation in various forms of his enrollment for $20,000 in Voluntary Spousal Life Insurance for his wife, from the City of Omaha Human Resource Department with Plaintiff providing consideration of $11 dollars biweekly, from his earnings.

31. On February 4, 2019, Plaintiff's wife of over 20 years, passed away.

32. Defendant refused to honor Plaintiff's $20,000 Voluntary Spousal Life Insurance.

33. Upon information and belief, the City of Omaha failed to adequately insure Plaintiff in spite of Plaintiff providing the requisite materials, upon his belief and the adequate consideration—for which he received insurance coverage conformation—for which a reasonable person could assume they were covered for $20,000 in Voluntary Spousal Life Insurance for his wife, from the City of Omaha Human Resource Department.

34. The Plaintiff made payment arrangements with the funeral home—that was retained to provide burial service for his wife, in reliance of Plaintiff's $20,000 Voluntary Spousal Life Insurance.

35. The funeral home agreed to provide Plaintiff burial services on credit.

36. Plaintiff incurred $7,666.37 in burial services for the burial of his wife.

37. From February 2019 to June 10, 2019, Plaintiff actively and zealously pursued his $20,000 in Voluntary Spousal Life Insurance for his wife, from the City of Omaha Human Resource Department—for which he paid adequate consideration and received insurance coverage conformation from the City of Omaha—for which a reasonable person could assume they were insured.[2]

38. At the time, Human Resource Director for the City of Omaha, Mr. Tim Young, who previously concluded, in an investigatory report that Plaintiff was "not subjected to incidents of inappropriate conduct of discriminatory or harassing nature because of [Plaintiff's] race or color—provided the claimant with a "Settlement and Release Agreement."

---

[2] See exhibit 2

6

39. At the time, Human Resource Director for the City of Omaha, Mr. Tim Young, was an attorney.

40. Plaintiff is not an attorney.

41. Human Resource Director for the City of Omaha, Mr. Tim Young, who was an attorney offered Plaintiff to pay out $7,666.37 of Plaintiff's $20,000 Voluntary Spousal Life Insurance in June of 2019 to entice Plaintiff to sign a "Settlement and Release Agreement."

42. Plaintiff made financial assurances the funeral home, to receive burial services, which he made in reliance of receiving his $20,000 Voluntary Spousal Life Insurance.

43. Attorney and Human Resource Director for the City of Omaha, Tim Young met with Plaintiff, who was unrepresented by counsel, who was under financial and emotional duress, convinced Plaintiff to sign the "Settlement and Release Agreement" which lacked consideration and only provided $7,666.37 of Plaintiff's entiled $20,000 Voluntary Spousal Life Insurance benefit.[3]

44. As such from around June 2019 to September 2019, Plaintiff utilized Family Medical Leave Act (FMLA).

45. Upon Plaintiff's return from FMLA in September 2019, Plaintiff still required reduced exertional and/or non-exertional essential job functions, and provided the requisite supporting medical documentation.

46. Upon Plaintiff's return, from FMLA, in response to Plaintiff's medical need for reduced exertional and/or non-exertional essential job functions, Defendants gave Plaintiff a written "Work List" generated by Plaintiff's supervisors Defendant, City Maintenance

---

[3] See exhibit 3

7

Superintendent, Mr. Ray Hutzel, a white male and Defendant Supervisor, Jerry Mahoney, a white male, which substantially and materially altered the specifications and job responsibilities of Plaintiff's work as a Stationary Engineer.

47. In part, the "Work List" charged Plaintiff with cleaning toilets, scrubbing walls, sweeping floors, picking up and disposing of trash, washing windows, cleaning urinals and other work consistent with that of a custodian.

48. When Plaintiff asked Defendant, Mr. Jerry Mahoney and Defendant, Mr. Ray Hutzell, to put the "Work List" in a Work Order, which formalizes the job duties within a system, Defendant, Mr. Jerry Mahoney and Defendant, Mr. Ray Hutzell failed to do so.

49. Similarly situated white employees, such as Wastewater Operator, Mr. Rick Jenson and Maintenance Mechanic Mr. Rich Mallory, in the Public Works Department, who were injured at work and required reduced exertional and/or non-exertional essential job functions, were given more favorable restrictions and not required to clean toilets, clean urinals, dispose of trash, scrub walls, wash windows, sweep floors, or do other work consistent with that of a custodian.

50. In the interim, Plaintiff satisfactorily performed duties as described on the "Work List", which in part charged Plaintiff with cleaning toilets, scrubbing walls, sweeping floors, picking up and disposing of trash, washing windows, cleaning urinals and other work consistent with that of a custodian, until November 14, 2019.

51. In October of 2019, Plaintiff's treating medical provider, Dr. Samuel Dubrow, evaluated Plaintiff and opined that Plaintiff could return to work as a Stationary Engineer with no restrictions.

52. In October of 2019, Plaintiff's treating medical provider, Dr. Samuel Dubrow, lifted all previous exertional and non-exertional work restrictions that were in place for Plaintiff.

53. Plaintiff provided Mr. Zachery Wagner—City of Omaha Human Resource Technician, Mr. David Sykora—Plant Manager, Mr. Ray Hutzel—Supervisor and City Maintenance Superintendent and Mr. Jerry Mahoney—Supervisor and Immediate Foreman with Dr. Samuel Dubrow's medical opinion and evaluation which opined that Plaintiff could return to work with no restrictions while further lifting all previous restrictions that were in place, as of October 2019.

54. On October 23, 2019, Mr. David Grauman, Labor Relations Director for the City of Omaha sent Plaintiff a certified letter, in part stating since Plaintiff was unable to perform the essential functions of his work as a Stationary Engineer, Plaintiff could apply to the City of Omaha's Employee Retirement System for serviced connected or non-service-connected disability; apply if eligible for a regular service retirement; or resign effective November 15, 2019—and failure to act upon these three options within the specified time "will force the City to proceed with a separation of employment."

55. Defendants did not lift Plaintiff's restrictions and "Work List" duties consistent with Dr. Samuel Dubrow opinion and evaluation.

56. Defendant required Plaintiff to submit to a Fit for Duty examination, which was ultimately scheduled on November 19, 2019.

57. Defendant scheduled Plaintiff a required Fit for Duty Examination, four days after the November 15, 2019, deadline to act—with inaction resulting in Defendant "proceeding with a separation of employment" with risk of losing benefits associated with his years of service.

58. In November of 2019, Plaintiff attempted to communicate with Ms. Deb Sanders, Human Resource Director, for the City of Omaha, regarding his job status and Mr. David Grauman's October 23, 2019, letter—yet he received no response.

59. Plaintiff resigned from his position as a Stationary Engineer in the Public Works Department on November 14, 2019.

60. Plaintiff's job performance was satisfactory.

## VI. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA") RETALIAITON

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Defendants at all times collectively employed more than 50 employees, engaged in interstate commerce and is an FMLA-eligible employer under applicable regulations.

63. Plaintiff exercised rights afforded by the FMLA.

64. Plaintiff suffered an adverse employment action.

65. A causal connection exists between the exercise of Plaintiff's rights under the FMLA and Defendant's adverse employment action.

66. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and other emoluments of employment.

## VII. SECOND CAUSE OF ACTION
## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII RETALIATION

67. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68. Plaintiff complained to Defendant about the harassment he experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended.

69. Defendant retaliated against Plaintiff because of his complaints and opposition to harassment.

70. Plaintiff's race and his protected activity were motivating factors in Defendant's retaliation against him.

71. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## VIII. THIRD CAUSE OF ACTION
## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICES ACT
## RETALIATION

72. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73. Plaintiff complained to Defendant about the racial harassment he experienced and otherwise opposed practices made unlawful by Nebraska Fair Employment Practices Act Neb. Rev. Stat. Section 48-1101, *est. seq.*,

74. Defendant retaliated against Plaintiff because of his complaints and opposition to harassment.

75. Plaintiff's race and his protected activity were motivating factors in Defendant's retaliation against him.

76. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear;

anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## IX. FOURTH CAUSE OF ACTION
## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII CONSTRUCTIVE DISCHARGE

77. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78. Defendant and/or its agents with Defendant's authority made Plaintiff's working conditions intolerable, forcing Plaintiff to resign his employment.

79. Defendant's agents with Defendant's authority acted with the intent of forcing plaintiff to quit or Plaintiff's resignation was a reasonably foreseeable result of Defendant's supervisor's actions.

80. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## X. FIFTH CAUSE OF ACTION
## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICES ACT CONSTRUCTIVE DISCHARGE

81. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82. Defendants and/or its agents with Defendants' authority made Plaintiff's working conditions intolerable, forcing Plaintiff to resign his employment.

83. Defendant's agents with Defendant's authority acted with the intent of forcing plaintiff to quit or Plaintiff's resignation was a reasonably foreseeable result of Defendants' actions.

84. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## XI. SIXTH CAUSE OF ACTION
## UNLAWFUL DISCRIMINAITON IN VIOLATION OF 42 U.S.C. § 1981

85. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86. Plaintiff was qualified and met the requirements for the position of City Maintenance Supervisor-Wastewater Treatment Plant in 2017.

87. Defendant changed the required year experience for the position of City Maintenance Supervisor-Wastewater Treatment Plant in 2017.

88. Defendant's action resulted in Plaintiff being deemed unqualified for the position.

89. Defendant filled the position with a person not in the same protected class as Plaintiff.

90. Such conduct was based on Plaintiff's race.

91. The unlawful discrimination affected a term, condition, or privilege or Plaintiff's employment.

92. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and other emoluments of employment.

93. The unlawful employment practices were willful and intentional, and Defendant knew and showed reckless disregard for the fact that its conduct was prohibited by 42 U.S.C. § 1981.

## XII. SEVENTH CAUSE OF ACTION
## EQUAL PROTECTION VIOLATION

94. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95. Defendants Ray Hutzell and Jerry Mahoney, in their individual capacities, deprived Plaintiff of rights protected by the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by establishing, maintaining or enforcing policies which create or foster racially discriminatory work environment, by treating African Americans differently than white men and by retaliating against those, including Plaintiff, who complain about a racially hostile work environment.

96. In the alternative, if the acts complained of were not committed by the individual Defendants pursuant to an official policy, practice or custom of the City of Omaha, Nebraska, they were committed by the individual Defendants with the purpose and intent of creating or fostering a racially discriminatory work environment by treating African Americans differently than white men and by retaliating against those, including Plaintiff, who complain about a racially hostile work environment.

97. Each individual Defendant acted under color of law.

98. Each individual Defendant's conduct was a proximate cause of damages sustained by Plaintiff.

99. Each individual Defendant acted with reckless or deliberate indifference to the rights of Plaintiff and with malice.

100. Plaintiff has been damaged as a direct and proximate result of the individual Defendants' acts and omissions aforesaid.

## XIII. SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT

101. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

102. Plaintiff and the City of Omaha entered a valid and binding contract with approval of Plaintiff's Voluntary Spousal Life Insurance.

103. Plaintiff paid consideration in the amount of $11 biweekly for $20,000 worth of Voluntary Spousal Life Insurance benefit.

104. Based upon the events and conduct described above, Plaintiff alleges that he did sign the "Settlement and Release" however it lacked consideration and in the alternative Plaintiff was under financial and mental duress.

105. Defendant breached the contract by failing or refusing to pay out $20,000 Plaintiff's Voluntary Spousal Life Insurance.

106. Plaintiff sustained damages because of the Defendant's breach.

## XIV. EIGHTH CAUSE OF ACTION
## RECISSION

107. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

108. On June 11, 2019, at the time, Human Resource Director for the City of Omaha, Mr. Tim Young—an attorney intended to influence and induce Plaintiff into a "Settlement and Release" by promising to pay Plaintiff's wife's funeral expense, which were over four months past due. Defendant knew of should have known that Plaintiff was under financial and emotional duress after the passing of his wife of over 20 years.

109. Additionally, Defendant incessant claims that this was Plaintiff's only available option and to "keep his head down in order to come out clean on the other end" further contributed to inducing Plaintiff sign a Settlement and Release".

## XV. NINTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

110. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

111. Nebraska law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Nebraska.

112. As a result of the action by Defendant set forth hereinabove, Defendant has violated the implied covenant of good faith and fair dealing as against said Plaintiff herein, and as a result therefore, Plaintiff is entered to damages as prayed.

113. Defendant as hereinbefore described acted in bad faith by not giving Plaintiff the consideration Plaintiff bargained for and by destroying or injuring the right of Plaintiff to receive the fruits of the contract.

114. Defendant is in violation of the said implied covenant of good faith and fair dealing.

115. Defendant's breach of the covenant of good faith and fair dealing have proximately and directly caused damages to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare Defendant's conduct to be in violation of Title VII of the Civil Rights Act of 1964, Section 701, et seq., 42 U.S.C. Section 2000e, et seq., 42 U.S.C. Section 1981, 42 U.S.C. §1983, 29 U.S.C. Section 2615(a) and (b) and of Neb. Rev. Stat. Section 48-1104 et seq., the FEPA;

b. Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, color or retaliation.

c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment.

d. Award Plaintiff compensatory relief, in an amount determined at trial, for emotional distress, humiliation, embarrassment, stress, depression, injury to reputation, mental anguish and anxiety, and other compensatory damages, as a result of Defendants' violation of Title VII of the Civil Rights Act of 1964, Section 701, et seq., 42 U.S.C. Section 2000e, et seq., 42 U.S.C. Section 1981 and of Neb. Rev. Stat. Section 48-1104, et seq., the FEPA;

e. Award Plaintiff liquidated damages in an amount determined at trial as a result of Defendants' conduct in violation of 29 U.S.C. Section 2615(a) and (b).

f. Award Plaintiff punitive and exemplary damages in an amount determined at trial as a result of Defendants' willful and intentional violation of Title VII of the Civil Rights Act of 1964, Section 701, et seq., 42 U.S.C. Section 2000e, et seq. and 42 U.S.C. Section 1981;

g. Award Plaintiff for reasonable attorneys' fees and costs to the fullest extent permitted by law; and

h. Court enters judgment against Defendant for damages suffered in the amount of $12,333.63 resulting from Defendant's contract breach along with interest accruing from date of breach, court costs, reasonable attorney fees, interest as allowed by law, and all other appropriate relief.

i. Grant Plaintiff such other further relief as may be just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all matters raised in this Complaint.

Dated: July 24, 2021.

BY: s/ *Potso Mahlangeni-Byndon*
Mr. Potso Mahlangeni-Byndon #43031
Attorney for Plaintiff
2016 Fowler Avenue
Omaha, NE 68110
(402) 570-1287
potso@byndonlaw.com
