IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RILEY T. GUNTER,<br><br>                    Plaintiff,<br><br>       vs.<br><br>CITY OF OMAHA, a Political Subdivision; RAY HUTZELL, in his official and individual capacity; and JERRY MAHONEY, in his official and individual capacity;<br><br>                    Defendants. | 8:21CV281<br><br>ORDER |

This matter comes before the Court on Plaintiff's Motion (Opposed) to File Amended Complaint (Filing No. 35). Plaintiff seeks to file an amended complaint adding claims for discrimination under Title VII and Nebraska Fair Employment Practice Act (NFEPA), a standalone claim for retaliation and constructive discharge under 42 U.S.C. § 1981, and a claim for promissory estoppel. Plaintiff maintains he learned facts supporting these new claims during discovery. Defendants oppose the motion because Plaintiff has not shown good cause for the late amendments as the factual basis supporting the proposed amendments has long been known to him. (Filing No. 43). For the following reasons, the Court will grant the motion.

## BACKGROUND

Plaintiff's claims arise out of his employment with the City of Omaha as a Stationary Engineer in the Public Works Department between March 18, 2013, and November 15, 2019. (Filing No. 1). Plaintiff, an African American male, alleges that during his employment he was harassed and discriminated against by other white employees. Plaintiff alleges he began reporting such treatment in 2017, prompting a formal investigation by the City's human resource director; however, on March 8, 2018, the City's human resource director concluded Plaintiff was not subjected to discrimination or harassment.

On October 11, 2018, Plaintiff again reported alleged workplace discrimination or harassment based upon his race by his immediate foreman, defendant Jerry Mahoney (Mahoney), a white male, prompting an internal investigation pursuant to the City of Omaha's Civilian

Bargaining Unit Employees and Omaha City Employee's Local 251 Official Grievance Form. The Local 251 declined to proceed to arbitration regarding Plaintiff's complaints.

Plaintiff also alleges that in 2018 he completed open enrollment for the City of Omaha for the option of $20,000 Voluntary Spousal Life Insurance for his wife. Plaintiff alleges in December 2018, January 2019, and February 2019, he received confirmation of his enrollment, and that he paid $11 biweekly from his earnings for such life insurance. On February 4, 2019, Plaintiff's spouse passed away; however, Defendants refused to pay out the life insurance proceeds. Plaintiff incurred $7,666.37 in burial services for his wife. Plaintiff alleges he was coerced by the City's human resource director, an attorney, to sign a "Settlement and Release Agreement" that provided Plaintiff with compensation only for his wife's burial rather than the full $20,000.

Plaintiff further alleges that on November 30, 2018, he was injured at work and submitted medical documentation supporting restrictions of certain job functions within the scope of his position. Plaintiff alleges Defendants honored these restrictions by reducing Plaintiff's essential job functions within the scope of his position, including a reduction of climbing, reaching, balancing, bending, stooping, squatting, kneeling, crouching, crawling, standing, walking, lifting, and carrying. Plaintiff alleges that from June 2019 to September 2019, he utilized the Family Medical Leave Act (FMLA). Upon his return in September 2019, he still required reduced exertional and/or non-exertional essential job functions, and provided supporting medical documentation. In response, Defendants gave Plaintiff a written "Work List" generated by Plaintiff's supervisors, defendant Ray Hutzel (Hutzel), a white male, and Mahoney, which substantially and materially altered the specifications and job responsibilities of Plaintiff's work as a Stationary Engineer. Specifically, the "Work List" tasked Plaintiff with cleaning toilets, scrubbing walls, sweeping floors, picking up and disposing of trash, washing windows, cleaning urinals, and other work consistent with that of a custodian. When Plaintiff asked Mahoney and Hutzell to put the "Work List" in a Work Order to formalize the job duties within a system, they did not. Plaintiff alleges similarly situated white employees injured at work were given more favorable restrictions and were not assigned custodial tasks. Nevertheless, Plaintiff alleges he satisfactorily performed the duties as described on the "Work List."

On October 23, 2019, the City's Labor Relations Director sent Plaintiff a certified letter (the Letter) stating that because Plaintiff was unable to perform the essential functions of his work as a Stationary Engineer, Plaintiff could apply to the City of Omaha's Employee Retirement

System for serviced connected or non-service-connected disability; apply for a regular service retirement; or resign effective November 15, 2019. The letter advised his failure to act upon one of the three options "will force the City to proceed with a separation of employment." On October 30, 2019, Plaintiff provided the defendants with a copy of his treating medical provider's evaluation that Plaintiff could return to work as a Stationary Engineer with no restrictions. ([Filing No. 1-1 at p. 4](#)). However, Defendants did not lift Plaintiff's restrictions or modify his "Work List" duties, and required Plaintiff to submit to a "Fit for Duty" examination, which was scheduled for November 19, 2019, four days after the deadline to act as set forth in the Letter. Plaintiff attempted to communicate with the City's human resources director regarding his job status and the Letter, but received no response. Plaintiff ultimately resigned his employment on November 14, 2019.

On October 7, 2019, and November 14, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Nebraska Equal Opportunity Commission ("NEOC") for the above allegations of discrimination. Plaintiff's administrative charge claimed discrimination on the basis of race and disability, and retaliation. ([Filing No. 1-1](#)). On April 27, 2021, Plaintiff received a Notice of Right to Sue from the EEOC and NEOC. Plaintiff filed a complaint on July 24, 2021, asserting causes of action for (1) FMLA retaliation, (2) Title VII retaliation, (3) retaliation under NFPA, (4) constructive discharge in violation of Title VII, (5) constructive discharge in violation of NFPA, (6) racial discrimination in violation of [42 U.S.C. § 1981](#), (7) Equal Protection violations by the individual defendants, (8) breach of contract for failure to pay life insurance benefits, (9) recission of the settlement release due to duress, and (10) breach of implied covenant of good faith and fair dealing. ([Filing No. 1](#)).

Plaintiff filed the instant motion for leave to amend his complaint on September 27, 2022. ([Filing No. 35](#)). Plaintiff seeks to add additional facts and causes of action for discrimination under Title VII and NFEPA, a standalone claim for retaliation and constructive discharge under [42 U.S.C. § 1981](#), and a cause of action for promissory estoppel regarding the life insurance policy. ([Filing No. 35-1](#)). Defendants oppose the motion because Plaintiff has not demonstrated good cause for his untimely amendments as the factual bases of the new claims have long been known to him and he did not diligently pursue the amendments. ([Filing No. 43](#)).

3

**ANALYSIS**

Federal Rule of Civil Procedure 15 provides that the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, a party does not have an absolute right to amend, and "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Reuter v. Jax Ltd., Inc., 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted). The court has substantial discretion in ruling on a motion for leave to amend under Rule 15(a)(2). Wintermute v. Kansas Bankers Sur. Co., 630 F.3d 1063, 1067 (8th Cir. 2011). Additionally, when a party seeks leave to amend under Rule 15(a) outside of the time period established by a scheduling order, the party must first demonstrate good cause under Rule 16(b). See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008). Whether to grant a motion for leave to amend is within the sound discretion of the district court. Popoalii, 512 F.3d at 497.

Defendants argue Plaintiff's motion was filed after the deadline to amend, and that Plaintiff has not demonstrated the requisite good cause to modify the scheduling order under Rule 16(b). However, because the parties indicated in their Rule 26(f) Report that they did not anticipate needing to amend their pleadings and did not provide the Court with a suggested deadline for doing so, the Court's Case Progression Order did not specifically set a deadline for parties to file motions to amend pleadings. (Filing No. 9 at p. 9; Filing No. 11). Because Plaintiff's motion for leave to amend was not technically filed outside any time period established by a scheduling order (because there was never such established time period), the Court will review Plaintiff's motion under the Rule 15(a) standard.[1]

Defendants' opposition to Plaintiff's proposed amended pleading boils down to undue delay. "Undue delay" is generally understood to occur "when a party waits until the eleventh hour of its case to file its motion to amend." Nitride Semiconductors Co. v. Digi-Key Corp., No. 17-CV-4359 (JRT/LIB), 2020 WL 13016670, at *3 (D. Minn. Aug. 10, 2020) (internal quotation marks omitted). And, "[d]elay alone is not a reason in and of itself to deny leave to amend; *the*

---

[1] Pursuant to Rule 16(b), "The scheduling order must limit the time to . . . amend the pleadings," which in this case, it did not. See Fed. R. Civ. P. 16(b)(3)(A). As such, in fairness to Plaintiff, the Court will not penalize Plaintiff for failing to abide by a deadline that was not properly established by the Court.

4

*delay* must have resulted in unfair prejudice to the party opposing amendment. . . . The burden of proof of prejudice is on the party opposing the amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)) (internal citation omitted).

Plaintiff commenced this action on July 24, 2021, (Filing No. 1), and the instant motion for leave to amend over a year later, on September 27, 2022. (Filing No. 35). At the time Plaintiff filed his motion, the deadline to complete written discovery had closed and the parties were working to complete depositions. The Court does find Plaintiff delayed in filing this motion. But, the Court finds such delay was not "undue" and has not resulted in "unfair prejudice" to Defendants. Although the Court disagrees with Plaintiff's assertions he learned "new" facts during discovery supporting the new claims proposed in his amended pleading, such finding actually supports Plaintiff's request for leave to amend. Plaintiff's NEOC and EEOC filing contained a charge for racial discrimination and describes facts supporting that racial discrimination charge. Plaintiff's original complaint also contained a claim for racial discrimination in violation of 42 U.S.C. § 1981 and contains factual allegations supporting that claim for racial discrimination. The fact that Plaintiff wants to add stand alone claims for racial discrimination under Title VII and NFEPA does not significantly alter the factual claims in this case—it just adds additional legal avenues to attempt to rectify that alleged racial discrimination.

Plaintiff's original complaint also contained Title VII and NFEPA claims for retaliation; adding a standalone claim for retaliation and constructive discharge under § 1981 also does not significantly alter the factual claims in this case. Plaintiff's original pleading also generally sets forth the same salient facts regarding his proposed new promissory estoppel claim, which is a different legal theory based upon substantially the same facts to recover the full amount of the life insurance policy Plaintiff had for his wife.

Defendants will not be unfairly prejudiced by these amendments because the amendments are essentially just different legal theories regarding the same factual issues that have been present in the case from the outset. At the time Plaintiff filed this motion, the pretrial conference and trial had not yet been set by the Court, the summary judgment motion deadline had not yet expired, and parties had not completed depositions. (Filing No. 23). The Court will hold a telephonic conference with counsel to entertain what, if any, limited additional discovery Defendants believe is necessary in light of Plaintiff's amended pleading. Defendants will also have a full opportunity

5

to move for summary judgment on Plaintiff's claims. Under the circumstances, and considering a court should "freely give leave" to amend a pleading "when justice so requires,"

**IT IS ORDERED:**

1. Plaintiff's Motion (Opposed) to File Amended Complaint ([Filing No. 35](#)) is granted. Plaintiff shall file the proposed amended complaint on or before **February 8, 2023**.
2. The planning conference to discuss case progression, dispositive motions, the parties' interest in settlement, and the trial and pretrial conference settings will be held with the undersigned magistrate judge on **February 22, 2023**, at **10:00 a.m.** by telephone. Counsel shall use the conferencing instructions asigned to this case to participate in the conference.

Dated this 31st day of January, 2023.

                                                  BY THE COURT:

                                                  s/Michael D. Nelson
                                                  United States Magistrate Judge