# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RILEY T. GUNTER,<br>    Plaintiff,<br><br>v.<br><br><br><br><br><br>CITY OF OMAHA, *et al*<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 8:21CV281<br><br><br>**PLAINITFF'S<br>RESPONSE TO DEFENDANTS'<br>UNDISPUTED<br>FACTS** |

PURSUANT TO NECivR 56.1(b)(1), Plaintiff submits this response to Defendant's Undisputed Facts, in opposition to Defendant's Motion for Summary Judgment.

## RESPONSE TO DEFENDANTS' UNDISPUTED FACTS

1-10. Undisputed

11. **DISPUTED:** Defendant honored Mr. Gunter's restrictions, until they assigned him the janitorial work list on September 18, 2019. (Gunter Depo. 120:23-122:22).

12-20. Undisputed.

21. **DISPUTED:** When Mr. Gunter signed up, he thought this was supplemental life insurance that the City of Omaha was providing and later learned through Mandy Garrod (City of Omaha Employee) or some other person – that this was not a City of Omaha policy. (Gunter Depo. 112:4-8).

22: Undisputed, to the fact that she passed away, on February 9, 2019. (Gunter Aff. ¶11).

23. **DISPUTED:** In November of 2018, Mr. Gunter, completed Open Benefits enrollment. Mr. Gunter signed up for $20,000 in Voluntary Spousal Life Insurance, for his wife, Ms. Carol Gunter. (Gunter Depo. 110:14-24; Gunter Aff. ¶10). This confirmation stated that Mr. Gunter's Voluntary Spousal Life Insurance was approved for $20,000 with an effective date of January 1, 2019. (Exhibit 18, pp. 1-2). Starting on January 1, 2019, Mr. Gunter received an enrollment confirmation from his employer, the City of Omaha with $11.00 of earnings as consideration. (Gunter Depo. 110:25-111:12; Exhibit 18, p. 3). From the pay period commencing on January 27, 2019, $11.00 was again deducted out of Mr. Gunter's paycheck in consideration of Voluntary Spousal Life Insurance. (Exhibit 18, p. 4). On February 4, 2019, the City of Omaha provided Mr. Gunter oral and written confirmation that he indeed did have Voluntary Spousal Life Insurance in the amount of $20,000. (Exhibit 18, pp. 5-6, 8

24-26. Undisputed.

27. **DISPUTED:** In April 2019, one month after the flood, the Papillion Creek Wastewater Treatment Plant was back up and running for primary treatment. (Sykora Depo. 72:19-73:1). By May 2019 the Papillion Creek Wastewater Treatment Plant was back up and running for secondary treatment. (Sykora Depo. 72:19-73:5). From March 2019 to May 2019, Stationary Engineers returned to the plant to monitor tasks at the facility for the rebuilding process to make sure that all the air handlers were functioning properly for people doing work down the tunnels. (Sykora Depo. 101:13-102:10).

28. **DISPUTED:** No employee was assigned the janitorial "Work List" due to the March 2019 flood. (Exhibit 9, Interrogatory 6.). Defendants contracted a cleaning service to clean up the plant. (Gunter Depo. 73:1-9).

29-33. Undisputed.

34. **DISPUTED**: The janitorial "Work List," a PDF document, contains a date stamp of September 11, 2019, which is seven days before Plaintiff returned to work on September 18, 2019. (Exhibit 8). Mr. Sykora could not explain how he edited a PDF file. The "Work List Was also created using Microsoft Word 2019, which did not exist in 2016. (Exhibit 8).

35. Undisputed

36. **DISPUTED:** Mr. Hutzell, Mr. Mahoney, Mr. Sykora, and the Omaha Human Resources Department's "belief" that assigning Mr. Gunter arduous janitorial duties was accommodating him, is pretextual. *See* Discrimination and Retaliation, argument, *infra*

37: **DISPUTED:** Defendant—Mr. Mahoney statement that this "Work List" contained nothing outside of Plaintiff's restrictions. (Mahoney Depo. 21-9:11) Also, Mr. Gunter denies that was ever said, by Defendant—Mr. Mahoney. (Gunter Depo. 96:3-16).

38-40: Undisputed

41. **DISPUTED:** Mr. Gunter found these newly assigned duties discriminatory and degrading. (Gunter Depo. 119:15:18; 122:23-123:1; 131:8-16).

42-43: Undisputed.

44. **DISPUTED:** Mr. Hutzell, Mr. Mahoney, Mr. Sykora, and the Omaha Human Resources Department's "belief" that assigning Mr. Gunter arduous janitorial duties so he could have some work to do to get paid, rather than stay at home on unpaid leave, is pretextual. *See* Discrimination and Retaliation, argument, *infra*

45: Undisputed

46: **DISPUTED:** The letter states "could" not "must." (Defendant's Exhibit 16, p. 4). Moreso, Mr. Gunter did not have to engage in the process as Mr. Gunter's restrictions were lifted on October 29, 2019, therefore requested a reasonable accommodation was not necessary (Gunter

3

Depo. 52:15-24; 85:20-86:5; Dubrow Depo. 35:1-20)

47-48: Undisputed.

49. **DISPUTED:** First, Mr. Gunter found these newly assigned duties discriminatory and degrading. (Gunter Depo. 119:15:18; 122:23-123:1; 131:8-16). Second, when Mr. Gunter received the janitorial "Work List", he reached out to his Union Local 251, with complaints of how disgraceful it was to get clarification on how this arduous "Work List" could be described as accommodating light duty. (Gunter Depo. 97:15:98-3) Union Local 251, advised Mr. Gunter not to accept a reasonable accommodation, but to go to his treating doctor, Dr. Dubrow, with his engineering job description, and get a professional medical evaluation/opinion on whether lifting the medical restrictions previously recommended by Dr. Dubrow, would be appropriate. (Gunter Depo. 50:6-51:4). Mr. Gunter's Local 251 Union Representative, Mr. Tony Burkhalter, told Mr. Gunter that if he accepted a reasonable accommodation, doing so would allow the City of Omaha to fire Mr. Gunter without legal consequence if the City of Omaha could show they could not accommodate him. (Gunter Depo. 50:6-51:4). Per the Local 251's attorney, a reasonable accommodation is not necessary if Mr. Gunter can fully perform his engineering job as described in his job description. (Gunter Depo. 51:16-52:24). Mr. Gunter followed the advice of Mr. Burkhalter and set an appointment with Dr. Dubrow for October 29, 2019.

50: Undisputed.

51: **DISPUTED**: The alleged fact that Mr. Gunter was told that due to "conflicting information" from Dr. Dubrow, the City HR department was going to schedule an independent exam, is not contained in the record.

52-57: Undisputed.